Mr. Justice FIELD
delivered the opinion of the court:
This ease comes before us on appeal from a decree of the District Court of the United States for the Northern District of California, approving the survey of the tract confirmed to Folsom, the testator of the respondents. The grant to Leidesdorff, from whom the respondents deraign their title, was issued in October, 1844, by Mieheltorena, then Governor of the Department of California. In September, 1852, the claim for the land granted was presented to the Board of Commissioners created by the act of March 8d, 1851, and by a decree of that body, rendered in June, 1855, the claim was adjudged valid and confirmed. The case being removed by appeal to the District Court, the attorney-general gave notice that the appeal would not be prosecuted by the United States, and upon the stipulation of the district attorney in pursuance of such notice, the claimants had leave to proceed upon the decree of the board as upon a final decree.
The grant describes the land as consisting of eight square leagues, and as situated on the bank of the American River, and bounded by land previously granted to the colony of Sutter, and by a range of hills — “ lomerias” — on the east. The provisional concession preceding the issue of the formal title, gives a similar description. The petition of Leidesdorff, which the grant recites, represents the land as being “ four leagues in length towards the east, and two in breadth towards the south,” and refers to a map transmitted with it. This map is a rough sketch indicating the general locality and outline of the land solicited.
The original papers give the locality, the form, and the dimensions of the tract granted. It is situated on the southern bank of the American River; it is four leagues in length by two leagues in width; it embraces eight square leagues; *453 and it is bounded by the land of Sutter on the west. From the data thus furnished, the boundaries, which are not designated, can be readily ascertained and declared. As a question was made before the board upon the location of some of the boundaries, and testimony was taken as to the line of the land of Sutter, and the position of the range of hills on the east, the case was a proper one for the board to fix with precision and declare the boundaries in its decree. As the appeal from the decree rendered was withdrawn by the United States, it is unnecessary to consider the character of the testimony produced or the weight to which it was entitled. The board acted upon it in connection with the title-papers, and in its decree, entered in April, 1857, declared the boundaries of the tract, running the same, except on the side of the river, by courses and distances.
In May following, a survey of the tract confirmed, was made under the directions of the Surveyor-General of California, and was approved and transmitted by him to the Commissioner of the General Land Office, at Washington, for examination and approval preliminary to the issue of a patent In May, 1858, the commissioner appears to have approved the survey, and to have made preparations to carry the same into a patent, but was overruled by the Secretary of the Interior, who, in September following, disapproved of the survey, and sent the case back to. the surveyor-general. At the subsequent December Term of this court, the decision of the case of the United States v. Charles Fossat (21 Howard, 445), was made, which was supposed by the District Court of California to recognize a jurisdiction in that court to supervise all surveys of confirmed claims under Mexican grants. Acting upon this view of the decision, the District Court, in November, 1859, ordered the new survey which had been made by the surveyor-general to be returned into court, and gave leave to the claimants to file exceptions to it. The new survey was accordingly returned, and exceptions to it were filed by the claimants and purchasers under them; and proceedings upon the exceptions were pending on the passage of the act of June 14th, I860 *454 Whatever question might he raised as to the jurisdiction of the District Court to supervise the survey .previous to that act, there can be none since its passage. That act applies not merely to surveys subsequently made, but also to such surveys as had been previously made and approved by the surveyor-general, and returned into the District Court upon objections to their correctness. Under the act, a monition was issued, and on its return counsel appeared on behalf of the United States, and for the claimants, and for the Natoma Water Company, a purchaser under the claimants. No other party appeared, and the court ordered “ the default of all parties not appearing” to be entered. The United States subsequently filed their exceptions. All parties agreed in averring a want of conformity in the survey with the description of the land contained in the decree of final confirmation.
The District Court set the survey aside, and ordered a new one. Subsequently, upon a rehearing, it approved and confirmed the survey originally made. From its decree in this respect the United States appealed, and on the argument of the appeal took positions in support of the second survey, which are directly the reverse of the objections urged in their name in the court below. To the apparent inconsistency in their action in this respect the attention of counsel was called, and the explanation given was that objections in ■the District Court, though put forward íd the name of the United States, were in fact urged on behalf of settlers claiming that part of the tract covered by the survey, was public land open to settlement. ' It is unnecessary to express any opinion upon the sufficiency of this explanation, or whether the United States are bound by objections on the record, which are advanced in their name, when presented for the protection of parties claiming interests under them by preemption, settlement, or other right or title. We refer to the matter, not because our judgment will be in any respect affected by it, but to indicate that it would be the better practice for the district attorney, when appearing for third parties in the name of the United States, to state the fact, *455 and give the names of the real contestants in the exceptions filed.
The material question for determination is, whether the survey approved conforms to the decree of confirmation. There must exist a reasonable confomiity between them, or the survey cannot be sustained. And such reasonable conformity we at once perceive when we take up the survey and trace its lines under the directions of the decree. Indeed, we do not think that such conformity will be seriously controverted by the learned counsel of the appellants, if the survey be restricted to the description contained in the decree. Their position is, that this description is to be controlled by the original grant and by the petition and map contained in the espediente, to which reference is made at the close of the decree; in other words, that the question of boundary is open for adjudication precisely as it would be if no description had been given. The position of the learned counsel in this respect cannot be maintained. The documents to which reference is made can only be resorted to in order to explain an ambiguity in the language of the description given; they cannot be resorted to in order to change the natural import of the language used, if there be no uncertainty therein. If reference to original title-papers, where no doubt arises upon the terms of the decree, would authorize an inquiry into a matter of boundary, it would with equal propriety authorize an inquiry into any other matter upon which the commission had acted; and every question affecting the decree might be opened anew to consideration and contestation.
The decree in this case is plain, and admits of only one construction: the object of the appellants is to change the meaning of its language, by showing that the commissioners were ignorant of the true course and direction of the American River, and therefore intended different lines from those they specifically declared, and that they could not have intended the eastern line to run as directed, in disregard of what is asserted to be the true position of the “ lomerias.”
The answer to all efforts of this kind is, that the decree is *456 a finality, not only on the question of title, but as to the boundaries which it specifies. If erroneous in either particular, the remedy was by appeal; but the appeal having been withdrawn by the government, the question of its correctness is forever closed.
The decree of the District Court is
Affirmed.
Messrs. Justices CLIFFORD, MILLER, and SWAYNE, dissented.